Draiíe, Cb. J.,
delivered the opinion of tbe court:
This is an action under tbe Aet 12th March, 1863, to recover tbe proceeds of tbe sale by a special agent of tbe Treasury Department, at Charleston, South Carolina, of tbe steamboat De Kalb; and tbe facts of the case, so far as it is necessary for tbe purposes of this opinion to set them forth, are as follows:
In April, 18G1, tbe De Kalb was tbe property of one Dingle, and was impressed into tbe service of tbe rebels at Charleston, and employed and used by tbe rebel authorities, under a charter, in connection with their war against tbe United States, from that time till February, 1865, when, on tbe evacuation of Charleston by tbe rebels, she was captured by tbe Union forces. From April, 1863, till her capture, she was tbe property of tbe claimant, having been purchased by him at a sale by tbe administrator of Dingle. After her capture she, with other vessels captured at Charleston, was placed under tbe charge of one Tower, an engineer in tbe United States navy, who, in February, 1865, made a parol agreement with the claimant to take her into tbe service of tbe United States, at a stipulated price per diem, which agreement was assented to in tbe following April, by tbe United States quartermaster at Charleston.
The boat was used in tbe service of tbe United States for more than a year, when tbe military-authorities turned her over to a special agent of tbe Treasury. Department, by whom she was sold. Tbe net proceeds of tbe sale were $3,9.63 38, for which this suit is brought.
Tbe question of jurisdiction in this court to render judgment against tbe United States upon such a claim meets us in limine, and involves tbe construction, not only of tbe Aet 12th March, 1S83, but of other acts; which we will now proceed to consider.
'The first section of that act provides:
“ That it shall be lawful for tbe Secretary of tbe Treasury, from .and after tbe passage of this act, as be shall from time to time see fit, to appoint a special agent or agents to receive and collect all abandoned or captured property in any State or Territory, or any portion of any State or Territory of tbe United States, designated as in insurrection against tbe lawful' govern *372 ment of the United States by tbe proclamation of the President of July 1, 1862: Provided, That such property shall not include a/ny land or description which'has been used, or which was intended to be used, for waging or carrying on war against the United States, such as arms, ordnance, ships, steamboats, or other water-craft, and their furniture, forage,' military supplies, or munitions of war.”
If the question of jurisdiction rested upon this section alone, there could hardly be two opinions in regard to it, so plain and absolute is the exception of all property of “any kind or description which has been used, or which was intended to be úsedfor waging or carrying on war against the United States,” as the steamboat in question was used.
But, as if that general exception might possibly fail of specific force, theproviso enumerates sundry descriptions of property, among which steamboats are m'entioned, as excluded from the operation of the act.
So far, therefore, as the terms of that section are concerned, we have no hesitation in holding that we have no authority to render a judgment against the United States in this case.
•But we have been cited to Mrs. Alexander’s Case', (2 Wallace, 404,) in connection with theUci 2d July, 1864, entitled “ An act in addition to the several acts concerning commercial intercourse between loyal and insurrectionary States, and to provide for the collection of captured and abandoned property, and the prevention of frauds in States declared in insurrection,” (13 Stat. L., 375 and it is assumed that an expression used by the Supreme Court in that case gives to that act the effect of doing away with the proviso aforesaid, whereby loyal owners of any description of property which came into the hands of the government in any way during the war are allowed to recover therefor against the government. Of course, if the Supreme Court has so settled the law, this court is bound to follow its decision, and would do so without question. But when the authority of that court is invoked for our guidance, it is clearly bur duty to examine and see whether, ih fact, it has spoken to the point upon which its authority is cited. In this case, it is clear to us that it has not, and that we must therefore pass upon the question before us without any exposition of it from that tribunal.
The portion of the opinion of the Supreme Court to which we are referred in this connection, is as follows:
“It seems that, in farther pursuance of the same views, by *373 an act of the nest session, Congress abolished maritime prize on inland waters, and required captured vessels and goods on board, as well as all other captured property, to be turned over to the treasury agents or to the proper officers of the courts. This act became a law a few weeks after the capture now under consideration, and does not apply to it. It is cited only in illustration of the general policy of legislation, to mitigate, as far as practicable, the harshness of the rules of war, and to preserve tor loyal owners, obliged by circumstances to remain in rebel States, all property or its proceeds to which they have just claims, and which may in any way come to the possession of the government or its officers.”
It will be observed that the court here explicitly states, 1. That the act referred to was passed after the capture of Mrs. Alexander’s cotton; 2. That it does not apply to that case; and 3. That it is cited only in illustration of the general policy of legislation. Manifestly, therefore, the scope and intent of that act were not before the court for adjudication in that case, pither directly or remotely; and the language quoted has, therefore, no force as a judicial exposition of the Act 2d July, 1864. We are, therefore, left to our own construction of that act, and we proceed to inquire whether its effect is to repeal or change the proviso to the first section of the Act 12th March, 1863 ? If it is, we have jurisdiction of the claimant’s action; if it is not, we have no such jurisdiction.
The only portion of the act of July 2,1864, which we can dis* cover to have any bearing on this question, is that part of its third section which is in the following words:
“ That ‘the first section of the ‘Act to provide for the collection of abandoned property, and for the prevention of frauds in insurrectionary districts in the United States,’ approved March 12,1863, is hereby extended so as to include the descriptions of property mentioned in an act entitled ‘ An act further to provide for the collection of duties on imports, and for other purposes,’ approved July 13,1861, and an act entitled ‘An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes,’ approved July 17,1862, respectively. * * * And section six of said first-mentioned act is hereby amended so as to include every description of property mentioned in the act of Jrdy 13,1861, and July 17, 1862, aforesaid.”
*374 The prima facie intent of this provision appears to us to be to extend tbe official powers of tbe special agents appointed by the Secretary of the Treasury, under the Act 12th March, 1863, to impose upon them additional duties, and to bring additional descriptions of property within the scope of their official action, if, therefore, in the two acts there referred to, we can find that any “ description of property” is “ mentioned,” which is embraced in the proviso aforesaid, we should be justified in considering that the intent of the above-quoted words of the act of 1864 was to remove, as to the property so mentioned, the prohibition of that proviso, and to authorize us to. render a judgment in favor of a loyal owner against the United States for the proceeds of any description of such property. This, then, leads us to an examination of the Acts 13th July, 1861, and 11th July, 1862, in this connection.
And first, as to the Act 13th July, 1861. In the fourth section of that act it is provided, that if “ any ship or vessel from beyond the United States, or having on board any articles sub-. ject to duties, shall enter or attempt to enter any such port, [that is, any port which shall have been closed by proclamation of the President,] the same, together with its tackle, apparel, furniture, and cargo, shall be forfeited to the United States.”
In the fifth section, after authorizing the President to declare States or parts of States in insurrection, and providing that .upon such declaration being made by him all commercial intercourse between the insurrectionary region and the rest of the United States “shall cease and be unlawful so long as such' condition of hostility shall continue,” it is enacted that “all goods and chattels, wares and merchandise, coming from said State or section into the other parts of the United States, and all proceeding to such State or section, by land or tcater, shall, together with the vessel or vehicle conveying the same, * * * be forfeited to the United States.”
The sixth section of said act is as follows: “That from and after fifteen days after the issuing of the said proclamation, as provided in the last foregoing section of this act, any ship or vessel belonging in ivhole or in part to any citizen or inhabitant of said State or part of a State whose inhabitants are so declared in a state of insurrection, found at sea, or in any port of the rest of the United States, shall be forfeited to the United States.”
These are all the portions of the Act 13th July, 1861, in which *375 “any descriptions of property” are “mentioned.” It cannot for a moment be contended that they contain any reference to property “which has been used, or which was intended to be used, for waging or carrying on war against the United States;” and containing no such reference,- they cannot be held, through the operation of the Act 2d July, 1864, to be in conflict with the proviso to the first section of the Act 12th March, 1863. So far, therefore, as the terms of the act of 1861 are concerned, thatjproviso stands intact and in full force.
In the Act 17th July, 1863, the references to property are in the fifth and sixth sections, authorizing the seizure and condemnation of “ all- the estate and property, money, stoclcs, credits, and effects” of certain descriptions of persons therein named, engaged in rebellion, and the appropriation of the same, or the proceeds thereof, “for the support of the army of the United States;” and to secure such appropriation, methods of judicial procedure are prescribed in the act. Here is manifestly no reference to property “ which has been used, or which was intended to be used, for waging or carrying on war against the United States;” and we must therefore hold that it was not the intent of the act of 1864, through its reference to the act of 1862, to disturb the proviso in the act of. 1863.
We conclude, therefore, that our view of the prima facie intent of the act of 1864 is sustained by the examination of the acts of 1861,and 1862, and that the whole effect of the above-cited provision of the former is to make it a part of the powers and duty of the agents of the treasury, appointed under the act of 1863, to aid in the finding and seizure, not only of abandoned or captured property in the rebel region, but of the property specified in the acts of 1861 and 1862, wherever it might be.
■ The exception declared in the proviso in question is, in our opinion, still fully operative, and expressly excludes jurisdiction in this court of any suit to recover the proceeds of any captured property “which has been used, or was intended to bé used, for waging or carrying on war .against the United States,” among which, as before stated, steamboats are expressly named. This is fatal to the claimant’s suit.
But even if the views we have, thus far expressed should not be deemed conclusive, there is another point which seems to ns to be entirely so.
*376 The Act 4tli July, 1864, uto restrict the jurisdiction of the Court of Claims,” &c., (13 Stat. L., 381,) provides “that the jurisdicton of the Court of Claims shall not extend to or include • any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the army or navy, or any part of the army or navy, engaged in the suppression of the rebellion from the commencement to the close thereof.”
In another case of this claimant, reported in 4 C. Cls. B., 87, we held that the steamboat De Kalb, after her capture, was appropriated by the army to its use for military purposes, and we so find the fact now; and that fact, if no other, ousts our jurisdiction of this action.
The claimant’s petition is dismissed.